IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MAX ALOBWEDE ETAPE                            :

                                        :

    v.                            : Civil Action No. DKC 2005-1404

                                         :

MICHAEL CHERTOFF                              :

                                         :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this naturalization action are: (1) the motion of Defendant Michael Chertoff, Secretary of the United States Department of Homeland Security, to dismiss, or alternatively for summary judgment (paper 13); (2) the motion of Defendant to seal the motion to dismiss and all accompanying documents and related filings (paper 12); (3) three motions of Plaintiff Max Alobwede Etape to strike (papers 20, 36, 37); and (4) the motion of Plaintiff to stay the decision on Defendant's motion to dismiss and to permit additional discovery (paper 35).  The issues have been briefed, no hearing deemed necessary, and the court now rules pursuant to Local Rule 105.6.[1] For the reasons that follow, Defendant's motion to dismiss will be granted.  Plaintiff's motions to strike and his motion to stay will be denied as moot.  Defendant's motion to seal will be denied.

_____

[1] The motion to dismiss (paper 13) is fully briefed.  Although some of the other motions may only be partially briefed, it will not be necessary to reach them because the case will be dismissed as moot.

**I. Background**

The following facts are undisputed. Plaintiff filed an application for naturalization with the Washington, D.C., District Office of the Bureau of Citizenship and Immigration Service, United States Department of Homeland Security ("CIS") on April 2, 2003. On September 9, 2003, Plaintiff appeared for his initial interview at the CIS District Office in Baltimore, Maryland. The application was continued in order for CIS to obtain additional information. Plaintiff submitted additional documentation on October 6, 2003. On May 23, 2005, Plaintiff filed a complaint in this court, pursuant to 8 U.S.C. § 1447(b), contending that more than 120 days had elapsed since Plaintiff's examination and he had not received a decision from CIS on his naturalization application. Plaintiff requests that after an evidentiary hearing to determine his eligibility, the court approve his application, or alternatively, that the court remand the application to CIS with instructions to approve.[2] (Paper 1).

---

[2] To the extent that Plaintiff is suggesting the court has to approve his application, either adjudicating the application itself or instructing CIS to do so on remand, Plaintiff is incorrect. As will be discussed later, the language of the statute simply provides that the district court may either "determine the matter" or remand the matter to CIS "with appropriate instructions." 8 U.S.C. § 1447(b). Though Plaintiff states in his complaint that he seeks either a hearing and a determination on the application *or* remand, he asserts in his opposition that he is requesting only a de novo hearing and a determination of his application (*i.e.*, Plaintiff eliminates the remand option). (Paper 21, at 9).

On October 18, 2005, while Plaintiff's complaint was pending, CIS denied Plaintiff's naturalization application because of a lack of good moral character.   Defendant then moved to dismiss the complaint, or alternatively for summary judgment, pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(6), and 56.   (Paper 13).   Defendant also moved to seal the motion to dismiss, along with the supporting memorandum, all exhibits, and the opposition and reply briefs filed in conjunction with Defendant's motion.   (Paper 12).

On January 27, 2006, Plaintiff filed a motion to strike certain evidence used to support Defendant's motion.   (Paper 20). On July 26, 2006, Plaintiff filed a motion to stay the court's decision on the motion to dismiss, requesting additional time for discovery.   (Paper 35).   Plaintiff filed two additional motions to strike on July 27, 2006, one pertaining to Defendant's use of certain evidence in the reply (paper 36), and one regarding arguments raised in the reply (paper 37).

## II.  Subject Matter Jurisdiction

At the time Plaintiff filed his complaint, CIS had not adjudicated his application and the relief requested in this court included direction to CIS to do so.   While the case was pending, CIS did what Plaintiff sought – it adjudicated his application. The question then naturally arises as to how, if at all, the adjudication by CIS affects the nature of this proceeding and the jurisdiction of the court.   The parties have espoused somewhat

3

meandering positions on this issue.  Because, however, the court's subject matter jurisdiction may be implicated, it is incumbent on the court itself to examine the issue in full: "A federal court has an independent obligation to assess its subject-matter jurisdiction, and it will 'raise a lack of subject-matter jurisdiction on its own motion.'"  *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 480 (4th Cir. 2005) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)).

Pursuant to Rule 12(b)(1), Defendant argued in a footnote to his original motion that "to the extent the basis of Plaintiff's Complaint for declaratory relief is based on the allegation that [CIS] failed to adjudicate his naturalization application, that claim is moot."  (Paper 13, at 2).  Plaintiff responded that his claim is not moot because the filing of the complaint in this court vested exclusive jurisdiction here to decide on a course of action pursuant to 8 U.S.C. § 1447(b).  Thereafter, in a footnote to the reply, Defendant appeared to agree that the complaint is not moot:

> Defendant did not argue that this case was moot and the Court did not have jurisdiction to review the case.  As stated in its motion, the District Court's review is de novo and in essence, the Judge sits as the naturalization examiner.  Motion page 2.  The footnote contained on page two of the motion was intended to reference only any potential claim requesting this Court to instruct the Defendant to act on the application.  As defendant admits in his Opposition to

4

> Defendant's Motion that he is not asserting
> any such action, that argument is itself moot.

(Paper 34, at 9).

As will be discussed below, Rule 12(b)(1) provides the proper basis upon which to dispose of Plaintiff's claim. *See Kia v. U.S. Immigration & Naturalization Serv.*, 175 F.3d 1014, No. 98-2399, 1999 WL 172818, at *1 (4th Cir. Mar. 30, 1999) (unpublished table decision); *Sze v. Immigration and Naturalization Serv.*, 153 F.3d 1005, 1008, 1010 (9th Cir. 1998); *Farah v. Gonzales*, No. 05-1944, 2006 WL 1116526, at *1-2 (D.Minn. Apr. 26, 2006).

Jurisdiction is an essential component necessary for ruling on the merits of any case:

> "Without jurisdiction the court cannot proceed
> at all in any cause.  Jurisdiction is power to
> declare the law, and when it ceases to exist,
> the only function remaining to the court is
> that of announcing the fact and dismissing the
> cause." *Ex parte McCardle*, 7 Wall. 506, 514,
> 19 L.Ed. 264 (1868) . . . .  The requirement
> that jurisdiction be established as a
> threshold matter "spring[s] from the nature
> and limits of the judicial power of the United
> States" and is "inflexible and without
> exception." *Mansfield, C. & L.M.R. Co. v.
> Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28
> L.Ed. 462 (1884).

*Steel Co. v. Citizens for a Better Envir.*, 523 U.S. 83, 94-95 (1998).  "Subject-matter jurisdiction . . . is an Article III as well as a statutory requirement; it functions as a restriction on federal power, and contributes to the characterization of the federal sovereign." *Constantine*, 411 F.3d at 480 (quoting *Ins.*

*Corp. of Ir., Ltd.*, 456 U.S. at 702) (internal quotation marks omitted).   Further, "'no action of the parties can confer subject-matter jurisdiction upon a federal court,' and ordinary principles of consent, waiver, and estoppel do not apply." *Id.* (quoting *Ins. Corp. of Ir., Ltd.*, 456 U.S. at 702).   Moreover, when a complaint is moot, it "cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it." *Nat'l Adver. Co. v. City of Miami*, 402 F.3d 1329, 1332 (11th Cir. 2005) (quoting *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328 (11th Cir. 2004)) (internal quotation marks omitted), *cert. denied*, 126 S.Ct. 1318 (2006); *see also Lux v. White*, 99 F.App'x 490, No. 03-2051, 2004 WL 1238342 (4th Cir. June 7, 2004) (holding that a district court properly dismissed a claim on the grounds that it was moot, and therefore there was no subject matter jurisdiction); *Mobley v. Acme Markets, Inc.*, 473 F.Supp.851, 858 (D.Md. 1979) ("mootness [is] derived from the Constitution, specifically Article III, which requires a 'case or controversy' as the fundamental ingredient of subject matter jurisdiction.").

Motions to dismiss for lack of subject matter jurisdiction are governed by Fed.R.Civ.P. 12(b)(1).   The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court.   *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).   In a 12(b)(1)

motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647. The court should grant the 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond*, 945 F.2d at 768.

Plaintiff contends that his claim is not moot because, once he filed the complaint in this court, the court had exclusive jurisdiction to decide on a course of action pursuant to 8 U.S.C. § 1447(b). Accordingly, he argues that CIS was without jurisdiction to deny the naturalization application and the October 18, 2005, denial is void. Plaintiff relies on the language in 8 U.S.C. § 1447(b), as well the decision in *United States v. Hovsepian*, 359 F.3d 1144 (9th Cir. 2004) (en banc), to support his argument. (Paper 21, at 6-7).

In the context of a naturalization proceeding, Congress has prescribed two instances in which a district court has jurisdiction. First, 8 U.S.C. § 1447(b) allows an individual who submitted an application for naturalization to request a hearing before a district court when CIS has delayed deciding the application:

> If there is a failure to make a determination
> [on a naturalization application] under

7

> section 1446 of this title before the end of
> the 120-day period after the date on which the
> examination is conducted under such section,
> the applicant may apply to the United States
> district court for the district in which the
> applicant resides for a hearing on the matter.

The statute, in turn, provides the court with two courses of action.  The court, in its discretion, either may decide the naturalization application or remand it to CIS for a decision:

> Such court has jurisdiction over the matter
> and may either determine the matter or remand
> the matter, with appropriate instructions, to
> the Service to determine the matter.

The second route for judicial review applies to a denial of the naturalization application once the individual has exhausted all administrative remedies:

> A person whose application for naturalization
> under this subchapter is denied, after a
> hearing before an immigration officer under
> section 1447(a) of this Title, may seek review
> of such denial before the United States
> district court for the district in which such
> person resides in accordance with chapter 7 of
> Title 5.  Such review shall be de novo, and
> the court shall make its own findings of fact
> and conclusions of law and shall, at the
> request of the petitioner, conduct a hearing
> de novo on the application.

8 U.S.C. § 1421(c).  This section limits the jurisdiction of the district courts by mandating that the applicant first must appeal to an immigration officer within CIS.  Only after a subsequent denial by the immigration officer can the district court review the agency's decision.  *See Kia*, 1999 WL 172818, at *1; *Aparicio v.*

8

*Blakeway*, 302 F.3d 437, 446 (5th Cir. 2002); *Farah*, 2006 WL 1116526, at *2.

The facts in *Kia v. U.S. Immigration & Naturalization Service*, are similar to those here.  The plaintiff, Kia, was interviewed regarding his naturalization application but did not receive a timely decision within 120 days.  *Kia*, 1999 WL 172818, at *1.  Kia filed a complaint in the district court for declaratory relief pursuant to § 1447(b), seeking judgment on his naturalization application.  While the complaint was pending, the Immigration and Naturalization Service ("INS"), the predecessor to CIS, denied his application because he failed to satisfy the English literacy requirements.  The INS moved to dismiss Kia's complaint as moot, and the district court granted the motion pursuant to Fed.R.Civ.P. 12(b)(1).  *Id.*  On appeal, the United States Court of Appeals for the Fourth Circuit held, albeit in an unpublished opinion, that "the plain language of § 1447[b] suggests the district court requires an unreviewed application in order to make a determination, and that the INS' denial of naturalization shortly after [the plaintiff] filed suit mooted the case and deprived the court of jurisdiction." *Id.*

Likewise, in *Farah v. Gonzales*, 2006 WL 1116526, at *2, the United States District Court for the District of Minnesota held that the plaintiff's request for the court to adjudicate his naturalization application became moot once CIS denied his request.

As with Kia, Farah filed an application for naturalization, interviewed with CIS, and received no response within 120 days of his examination. *Id.* Farah filed a complaint with the district court pursuant to § 1447(b), requesting that the court either determine his eligibility for naturalization or remand to CIS and compel the agency to decide. *Id.* Approximately one month later, while the case was pending in district court, CIS denied Farah's application, and subsequently moved to dismiss his complaint. *Id.* The court granted the motion, holding that a decision by CIS, even after Farah had filed a complaint with the court, mooted Farah's request and therefore the court lacked subject matter jurisdiction to proceed. *Id.* at *2.

The Ninth Circuit, however, examined similar facts and reached the opposite conclusion regarding the district court's jurisdiction in naturalization proceedings initiated pursuant to § 1447(b). *United States v. Hovsepian*, 359 F.3d at 1144. The two plaintiffs had applied for naturalization and neither received a decision within 120 days of their examination. The plaintiffs then filed a complaint with the district court, requesting adjudication of their applications, pursuant to § 1447(b). Shortly thereafter, CIS denied the applications, but the district court continued to consider them and held a de novo hearing on the matter. *Id.* at 1152.

On appeal to the Ninth Circuit, a panel initially held that the district court abused its discretion by retaining jurisdiction over the naturalization applications. *United States v. Hovsepian*, 307 F.3d 922, 933 (9th Cir. 2002) ("*Hovsepian I*"). The court reasoned that, pursuant to § 1421(c), Congress had indicated a preference for applicants to exhaust administrative remedies before seeking judicial review, and, while there exists a need for judicial review when CIS has delayed a decision for more than 120 days, once the agency has made a decision "the need for immediate judicial review evaporates." *Hovsepian I*, 307 F.3d at 932. The court added that nothing in § 1447(b) strips CIS of jurisdiction when the 120-day period expires:

> Jurisdiction over the application does not automatically vest in the district court, but rather the court may, as a matter of discretion, affirmatively assert jurisdiction if it wishes. It would be entirely contrary to § 1447(b)'s purpose of ensuring prompt determinations to suspend [CIS] authority while the district court decides whether to exercise jurisdiction.

*Id.* at 932-33.

On subsequent rehearing en banc, however, the Ninth Circuit disagreed and held that the district court had exclusive jurisdiction over the applications once the complaint was filed, and that any decision by CIS subsequent to the filing of the plaintiffs' complaint would not impact the court's jurisdiction. *United States v. Hovsepian*, 359 F.3d at 1164 ("*Hovsepian II*"). In

11

*Hovsepian II*, the court based its holding on an interpretation of the text of § 1447(b), the statutory context, and Congress's policy objectives in enacting the relevant statutory sections.   359 F.3d at 1159-64.   First, the court reasoned that the text of § 1447(b) "bestows on the district court the power to pursue either of two options."   *Id.* at 1160.   The court either may determine the matter itself or remand to the agency to make a determination.   According to the Ninth Circuit, through this language Congress "intended to vest power to decide languishing naturalization applications in the district court *alone*, *unless* the court chooses to remand the matter to the [CIS], with *the court's* instructions."   *Id.* (emphasis in original) (internal quotation marks omitted).   Additionally, the court stated that, pursuant to the provision allowing the district court to remand "with appropriate instructions," the court could make findings of fact and conclusions about the application and then order the agency to adopt those findings.   *Id.* at 1160-61.

The court also relied on *Brock v. Pierce County*, 476 U.S. 253 (1986).   According to the court, *Brock* "held that an agency does not lose jurisdiction unless the statute at issue requires that the agency act within a particular time period and the statute specifies a consequence for failure to comply with the time limit."   *Hovsepian II*, 359 F.3d at 1161.   The Ninth Circuit stated that § 1447(b):

> requires [CIS] to make a decision regarding a
> naturalization application within 120 days of

12

> [CIS's] initial interview of the applicant.
> Further § 1447(b) specifies a consequence for
> failure to meet this deadline, namely that the
> district court gains jurisdiction over the
> matter (upon the applicant's request) until
> the district court decides the case or
> exercises its discretion to remand the matter
> to [CIS].  Under *Brock*, therefore, § 1447(b)
> is an effective jurisdiction-stripping
> statute.

*Hovsepian II*, 359 F.3d at 1161.

Additionally, the court looked to the statutory context of § 1447(b), interpreting the language in § 1447(b) in conjunction with § 1421(c).  *Hovsepian II*, 359 F.3d at 1162.  The court explained that because the latter provision allowed the court to undertake a de novo review on an application and make the final naturalization decision, no matter what CIS's findings were, then it would "[make] sense to interpret [§ 1447(b)] as giving district courts the last word, too."  *Id.*  The court reasoned that having "the last word" under § 1447(b) meant that the court could exercise "exclusive jurisdiction over those naturalization applications on which [CIS] has failed to act in a timely fashion."  *Id.*

Finally, the court in *Hovsepian II* stated that interpreting § 1447(b) to allow concurrent jurisdiction rather than exclusive jurisdiction would "undermine four main public policy objectives that Congress sought to further" by enacting the Immigration Act of 1990.  359 F.3d at 1163.  The court stated that Congress intended to reduce the waiting time for naturalization applicants, streamline the process of applying and reduce the burdens on courts

13

and CIS, address concerns with the consistency and fairness of naturalization decisions, and give naturalization applicants the power to choose which forum would adjudicate their applications. *Id.* at 1163-64.  The court concluded that all of these aims would be frustrated by an interpretation that did not give the courts exclusive jurisdiction once an applicant filed a complaint.[3]  *Id.*

The reasoning of the Fourth Circuit in *Kia*, 1999 WL 172818, the District of Minnesota in *Farah*, 2006 WL 1116526, and the Ninth Circuit panel decision in *Hovsepian I*, 307 F.3d 922, is simply more logical.  The statutory language makes clear that the jurisdiction of the district court under § 1447(b) is premised on a naturalization application that has not yet been adjudicated by CIS.  Nothing in the statute strips CIS of its jurisdiction where more than 120 days has elapsed since a naturalization examination, CIS has not rendered a decision, and the applicant has filed a claim in district court pursuant to § 1447(b).

Additionally, the *Hovsepian* II court's reliance on *Brock* to dictate the conclusion that § 1447(b) is a jurisdiction-stripping statute is misplaced.  In *Brock*, the Supreme Court addressed a provision of the Comprehensive Employment and Training Act ("CETA"), which provided that the Secretary of Labor ("Secretary")

---

[3] Several district courts have agreed with the reasoning in *Hovsepian II*.  *See, e.g.*, *Zaranska v. U.S. Dep't of Homeland Sec.*, 400 F.Supp.2d 500 (E.D.N.Y. 2005); *Castracani v. Chertoff*, 377 F.Supp.2d 71 (D.D.C. 2005); *Meraz v. Comfort*, No. 05-C-1094, 2006 WL 861859 (N.D.Ill. Mar. 9, 2006).

"'shall' issue a final determination as to the misuse of CETA funds by a grant recipient within 120 days after receiving a complaint alleging such misuse."[4]  476 U.S. at 254-55.  The facts of the case indicated that the Secretary's final determination of misuse was made more than 120 days after an audit report was filed indicating a possible misuse of funds.  Despite the untimely decision, the Secretary ordered the grant recipient to repay the funds that were at issue.  The Court was called upon to determine whether the Secretary lost the power to recover misused funds after the expiration of the 120-day period.  *Id.* at 255.

The Court considered the statutory language, legislative history, and relevant administrative regulations promulgated under the statute, and held that "CETA's requirement that the Secretary 'shall' take action within 120 days does not, standing alone, divest the Secretary of jurisdiction to act after that time."  *Id.* at 266.  The Court explained:

> We would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake.  When, as here, there are less drastic remedies available for failure to meet a statutory deadline, courts should not assume that Congress intended the agency to lose its power to act.

---

[4] This statute was repealed in 1982 and replaced by the Job Training Partnership Act, 29 U.S.C. § 1501 *et seq.*, in October of the same year.

*Brock*, 476 U.S. at 260 (footnote omitted).  The Court clarified in a footnote that any complainant adversely affected by a failure to act under CETA could bring an action in district court to compel agency action under the Administrative Procedure Act.  *Id.* Bringing an action in a district court was, according to the Court, in fact, a "less drastic" remedy for failure to meet a statutory deadline than stripping the agency of its power, as a consequence of its failure to act within the statutory time frame.  *Id.*  The Court also distinguished between statutes of limitations established by Congress for filing complaints and time requirements for certain agency actions, stating that the provision in CETA:

> does not merely command the Secretary to file a complaint within a specified time, but requires him to resolve the entire dispute within that time.  This is a more substantial task than filing a complaint, and the Secretary's ability to complete it within 120 days is subject to factors beyond his control. There is less reason, therefore, to believe that Congress intended such drastic consequences to follow from the Secretary's failure to meet the 120-day deadline.

*Id.* at 261.

In light of the Court's discussion in *Brock*, the fact that an applicant for naturalization has the option to pursue a claim in district court where CIS fails to make a determination within 120 days is not a sufficient indication that Congress intended to divest CIS of the power to make a determination on the application after a complaint is filed.  Moreover, § 1447(b) specifically

allows a court to remand the case back to CIS for a determination, providing further support that Congress did not intend to prohibit CIS from making a decision as a consequence of its failure to act within 120 days.  Finally, like the agency action at issue in *Pierce County*, CIS's determination of a naturalization application may be highly involved, and the agency's ability to complete the process within 120 days may be subject to factors beyond its control.  For example, CIS may need additional information regarding an applicant that is not readily available and that may delay the determination.

The Ninth Circuit also stated that, because § 1421(c) allowed the district court to make a final determination on a naturalization application after it had proceeded through the required stages of administrative review, the district court should have the "last word" under § 1447(b) as well, meaning exclusive jurisdiction.  The Ninth Circuit's interpretation, however, does not comport with the rule of statutory construction that "where Congress includes particular language in one section of a statute but omits it in another provision of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." *Soliman v. Gonzales*, 419 F.3d 276, 283 (4th Cir. 2005) (quoting *Immigration & Naturalization Serv. v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987)) (internal quotation marks omitted).  Thus, it does not necessarily follow that having

the "final word" when reviewing a naturalization application under one statutory provision means that the district court has a similar scope of power under another provision, or that this "final word" must translate into jurisdiction over the naturalization application to the exclusion of CIS.

Moreover, contrary to the Ninth Circuit's analysis, allowing CIS to make a decision while an applicant's complaint is pending before a court actually helps further the proffered Congressional aims.  If CIS decides a naturalization application prior to the district court addressing the applicant's complaint, it would thwart the aim of timeliness to make the applicant wait for a judicial determination on the issue, especially when the court has the option of simply remanding the case back to CIS to make the same decision that already had been made while the applicant's complaint was pending.  Instead, if there was an unfavorable administrative decision, the applicant immediately could begin the administrative appeal process and possibly reapply if unsuccessful. Moreover, CIS could grant a naturalization application while a complaint was pending, and an interpretation of § 1447(b) that divested CIS of jurisdiction would invalidate that action.  This outcome is counterintuitive and actually would result in harm to the applicant who presumably wants to be naturalized.[5]  Further,

---

[5] There have been many cases in this district brought under § 1447(b) that have been dismissed as moot or voluntarily dismissed
(continued...)

exclusive jurisdiction on the part of the district court generally is inefficient with regard to both the courts and CIS because of the likelihood of duplication of investigation and review. Finally, fairness and consistency would best be achieved when the agency charged with the expertise to make decisions on naturalization applications is handling the initial determination and subsequent administrative appeal.[6]

Plaintiff filed a complaint seeking relief pursuant to § 1447(b), after his naturalization application had been pending more than 120 days  At the time the complaint was filed, this court had the discretion under § 1447(b) either to make a determination on the application or to remand the application to CIS.  Once CIS made a decision, however, Plaintiff's case became moot, and this court

---

[5](...continued)
because of settlement, in which CIS approved a naturalization application after the case was initiated in this court, including: *Popov v. Caterisano*, AW 05-1983; *Deviatov v. Gonzales*, PJM 05-3433; *Deviatov v. Gonzales*, RDB 06-602; *Xie v. Gonzales*, AMD 06-1179; *Wang v. Gonzales*, PJM 06-1199; and *Lee v. Gonzales*, JFM 06-1326.

[6] The Ninth Circuit in *Hovsepian II* also states that concurrent jurisdiction would frustrate the goal of giving applicants the power to choose where their applications are adjudicated.  When the application remains without a decision after 120 days following an examination, applicants can choose to go to district court under § 1447(b).  An applicant's "choice" may be frustrated where the individual files a complaint pursuant to § 1447(b) and CIS makes a decision on the application while the complaint is pending.  The possible frustration of this policy interest alone, however, is not sufficient to compel the interpretation of § 1447(b) proposed in *Hovsepian II*.

was without jurisdiction over the claim.[7]  *See Kia*, 1999 WL 172818.

Accordingly, Defendant's motion to dismiss will be granted and

Plaintiff's motion to stay (paper 35) and motions to strike (papers

20, 36, 37), all of which address the merits of the naturalization

denial, will be denied as moot.

## III.  Motion to Seal (Paper 12)

Defendant requests, pursuant to Local Rule 105.11, that the

court seal the motion to dismiss, the memorandum in support of the

motion, the opposition and reply briefs, and any accompanying

exhibits.  There is a well-established common law right to inspect

and copy judicial records and documents.  *See Nixon v. Warner

Commc'ns, Inc.*, 435 U.S. 589, 597 (1978).  If competing interests

outweigh the public's right of access, however, the court may, in

its discretion, seal those documents from the public's view.  *See

In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984).  Local

Rule 105.11 provides:

> Any motion seeking the sealing of pleadings,
> motions, exhibits or other papers to be filed
> in the Court record shall include (a) proposed
> reasons supported by specific factual
> representations to justify the sealing and (b)
> an explanation why alternatives to sealing

---

[7] It appears from their respective papers that both Plaintiff
and Defendant are proceeding as if Plaintiff's complaint was
converted into one seeking judicial review of a naturalization
denial pursuant to § 1421(c).  Plaintiff did not submit an amended
complaint requesting relief pursuant to § 1421(c), nor has
Plaintiff presented any documentation showing that he has completed
the necessary administrative appeals prior to requesting judicial
review under § 1421(c).

would not provide sufficient protection.  The
Court will not rule upon the motion until at
least 14 days after it is entered on the
public docket to permit the filing of
objections by interested parties.  Materials
that are the subject of the motion shall
remain temporarily sealed pending a ruling by
the Court.  If the motion is denied, the party
making the filing will be given an opportunity
to withdraw the materials.

Defendant asserts that the information to be sealed likely is
protected by the Privacy Act, 5 U.S.C. § 552(a).  Defendant argues
that this information is sensitive, including things like social
security numbers and dates of birth used by Plaintiff, but that the
information is necessary to the defense.  (Paper 12, at 2).
Defendant's motion has been on the docket for more than fourteen
days and is unopposed by Plaintiff.

Defendant's motion to seal is overbroad in what it seeks to
exclude.  Defendant's exhibits include records that already are
available publicly, such as newspaper articles.  Defendant also has
not provided an explanation as to why alternatives to sealing, such
as redaction, would not provide sufficient protections.  Because
Defendant has failed to comply with Rule 105.11, the motion to seal
will be denied.  Given the dismissal of the complaint, however,
which does not implicate the sensitive material, the better course
is to permit the Defendant to withdraw that material.  The parties
will have fifteen days to file a request to withdraw sensitive
material.  Alternatively, if Defendant wishes the documents to
remain in the court file, he must submit a properly supported

motion, including if appropriate a request to file redacted papers in the publicly available file, and portions under seal.   In the meantime, the papers will remain temporarily under seal.

**IV.  Conclusion**

For the foregoing reasons, Defendant's motion to dismiss will be granted.  Plaintiff's motion to stay and Plaintiff's motions to strike will be denied as moot.  Defendant's motion to seal will be denied, although the parties will have fifteen days to file appropriate requests.  A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge